```
              UNITED STATES DISTRICT COURT
                DISTRICT OF MASSACHUSETTS

MARLENE T. TRAHAN              )
     Plaintiff                 )
                               )
v.                             )    No. 04cv30183-MAP
                               )
JOHN E. POTTER, Postmaster     )
General, United States Postal  )
Service,                       )
     Defendant                 )
```

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

The plaintiff, Marlene T. Trahan, has sued the Postmaster General of the United States Postal Service alleging a "hostile work environment" motivated by disability discrimination. The Postmaster General seeks summary judgment on two main grounds. First, the plaintiff cannot show discrimination on the basis of membership in any protected class. Second, the alleged conduct was not sufficiently "severe or pervasive" to state a claim for a hostile work environment. Therefore, summary judgment should enter for the defendant.

### LOCAL RULE 56.1 STATEMENT OF MATERIAL FACTS[1]

1. At times relevant to the complaint, the plaintiff, Marlene Trahan ("Trahan"), worked at the United States Postal Service ("Postal Service") Bulk Mail Center ("BMC") in

---

[1] For the purposes of this motion only, the defendant accepts the truth of the facts set forth in this statement.

Springfield, Massachusetts.  Complaint ¶ 2.  Her complaint alleges that she "endured an ongoing series of discriminatory harassment/hostile work environment by Supervisor Linda Nawracaj, Manager Leon Kopacz, and Ethical Officer Brian Sheehan" based on her mental disability.  Complaint ¶ 7.

2.   The initial incident that provides the basis of Trahan's discrimination claim occurred on February 13, 1997.  On that date, Trahan witnessed a verbal altercation between Postal Service Supervisor Linda Nawracaj and mail handler Darlene Hodges.  Ex. A, Affidavit of Complainant.  Trahan found the incident upsetting.  Ex. B, Trahan Deposition, p. 5.[2]

3.   Nawracaj asked Trahan the next day what Trahan was going to say in her witness statement about the incident.  Trahan responded that she did not think it was a good idea for Nawracaj to call.  The conversation lasted a few minutes.  Ex. B, p. 6.

4.   On February 18, 1997, Trahan prepared a written statement about the incident.  Ex. B, pp. 6-7.

---

[2]Trahan was deposed in the administrative Equal Employment Opportunity proceedings, on December 22, 2003, and April 30, 2004.  The April 30, 2004, deposition is attached as Ex. B.  Trahan's interrogatory responses in the instant lawsuit state that the alleged acts of discrimination are described in the April 30, 2004, deposition.  Ex. C.

5.   On February 22, 1997, Nawracaj asked Trahan why she had not included additional details in her statement. Trahan was upset by the conversation and felt fearful, although she could not identify why she was fearful. Ex. B, pp. 9-14.

6.   After the incident, Trahan felt that co-workers were keeping their distance from her. Ex. B, pp. 15-16.

7.   The other alleged discriminatory acts in 1997 and 1998 were:

   a.   On November 19, 1997, Postal Service Ethical Officer Brian Sheehan telephoned Trahan at home "screaming and hollering" about her questioning the ethics of management. Ex. A, ¶ 16(h).

   b.   On January 10, 1998, Trahan's supervisor told her that she could not work through her lunch break. Ex. B, p. 17.

   c.   In April or May of 1998, three African violet plants on Trahan's desk were poisoned. Trahan does not know who was responsible for the incident with her plants. At around the same time, plants at her home were vandalized. Ex. B, pp. 18-21. Trahan believes that the incident with her plants was part of a conspiracy of unknown individuals to get her to leave her job. Ex. B, pp. 56-57.

8.      Trahan suffered from a ruptured ovarian cyst in May 1998.  She left work around that time.  She did not return until July, 1999, due to depression.  Ex. B, pp. 20-21.  Trahan filed a worker's compensation claim sometime in 1998 and believes that Kopacz provided false information relative to her worker's compensation claim.  It is not clear, however, if Trahan claims that Kopacz's actions with respect to the worker's compensation claim were discriminatory.  Ex. B, pp. 48-54.

9.      When Trahan returned to work in July 1999, she was assigned to a different department and different supervisor.  She alleges that several incidents occurred in this time frame that resulted in a hostile work environment.

     a.      On an unknown date, Leon Kopacz came to the third floor where Trahan worked and walked around the perimeter of the area.  He did not say or do anything to Trahan.  The plaintiff only considered the incident significant because the third floor was not Kopacz's normal work area.[3]  Ex. B, pp. 22-23.

---

[3] The government's attorney dated the event as occurring on October 21, 1999, however Trahan did not indicate whether she agreed with that date.

      b.   On an unknown date, some plants at Trahan's home were vandalized.  Ex. B, pp. 25-26.[4]

      c.   On January 8, 2001, Trahan received a telephone call from Nawracaj's lawyer asking for a meeting.  Trahan met with the lawyer the following day for about 30 minutes and the lawyer asked if she would prepare another written statement.  Trahan refused to do so saying that her original statement was complete.  Ex. B, pp. 31-32.  She received a second telephone call from the attorney in May, 2001, but does not remember the substance of the conversation.  Ex. B, p. 39.

      d.   On January 30, 2001, Trahan found that her calendar had been replaced in her cubicle with a calendar that pictured a man holding a machine gun, apparently by the employee who used her cubicle on another shift.  After Trahan brought the incident to her supervisor's attention, he removed the calendar.  Ex. B, pp. 32-36.

      e.   In April, 2001, Trahan received two Express Mail packages with her home telephone number on the labels.  At least one of the packages was from a Katherine Montague; the

---

[4]The government's attorney dated the event as occurring on August 24, 2000, however Trahan did not indicate whether she agreed with that date.

plaintiff had no reason to believe that Montague would want to upset her. Ex. B, pp. 37-38.

      f.   On March 28, 2003, Trahan found a letter she had written about her EEO complaint in a loose-leaf binder at the post office. Trahan does not know who put the letter in the binder. Ex. B, pp. 41-43.

      g.   On December 16, 2003, Trahan parked in her supervisor's parking spot because she could not find another parking place. Her supervisor subsequently gave her permission to keep her car there for the day. At the end of the day, another supervisor told her that she had "no business" parking in her supervisor's spot. Trahan said the other supervisor was upset because someone else had taken his parking place. Ex. B, pp. 47-49.

      h.   At the end of April, 2004, Kopacz entered the area where Trahan was working with two other Postal Service employees and asked for the code for the copier. Kopacz then made a copy and left the area. The event was significant to Trahan because it was unusual for Kopacz to be in that area and she related the incident to the fact that her deposition was scheduled for the following week. Ex. B, pp. 26-27.

    10.    Trahan's alleged disability is depression.  Ex. B, p. 64.  She does not know whether Kopacz or Nawracaj, the alleged discriminating officials, knew of her mental disability.  Ex. B, p. 65.  She believes that her supervisors, Beaman and Lariviere, were aware of her mental disability but does not believe that they were responsible for the hostile work environment.  Ex. B, pp. 65-66.  Although Trahan alleges disability discrimination in her lawsuit, she testified at her deposition that she did not know why she was being discriminated against, except that she believed it was related to her witnessing the altercation involving Nawracaj.  Ex. B, p. 69.

    11.    Trahan is generally able to care for herself and drive.  She has difficulty sleeping and suffers from nightmares.  Ex. B, pp. 71-74.

<b><u>ARGUMENT</u></b>

**I.    THE SUMMARY JUDGMENT STANDARD**

The role of summary judgment is to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine issue for trial.'"  <u>Mesnick v. General Electric Co.</u>, 950 F.2d 816, 822 (1st Cir. 1991) (quoting <u>Garside v. Osco Drug, Inc.</u>, 895 F.2d 46, 50 (1st Cir. 1990)).  "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving

party for a jury to return a verdict for that party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986) (citation omitted). Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celetox Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

When the nonmoving party "bears the ultimate burden of proof, he must present definite, competent evidence to rebut the motion." <u>Mesnick</u>, 950 F.2d at 822 (citations omitted). Not every factual dispute will defeat summary judgment. <u>See Anderson</u>, 477 U.S. at 252. The nonmoving party must demonstrate the existence of contested facts for the elements of its case based on more than conclusory allegations, improbable inferences, and unsupported speculation in order to survive the motion. <u>See Celetox Corp.</u>, 477 U.S. at 324. Evidence that "is merely colorable or is not significantly probative" will not defeat summary judgment. <u>Anderson</u>, 477 U.S. at 249-50.

**II.  TRAHAN CANNOT SHOW THAT SHE WAS THE VICTIM OF DISABILITY DISCRIMINATION**

To support a claim for a hostile work environment, a plaintiff must show, among other things, that "(1) she is a member of a protected class; (2) she was subject to uninvited

8

harassment; and (3) the offending conduct was because of her [membership in a protected class]. Rivera v. P.R. Aqueduct & Sewers Auth., 331 F.3d 183, 189 (1st Cir. 2003). See also, Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 258 (1st Cir. 1999).

Trahan claims to be a member of a protected class of disabled individuals. To sustain that claim, she must prove that her impairment substantially limits major life activities, that she has a record of such impairment or that she is regarded as having such an impairment. See Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 193 (2002) (citing 42 U.S.C. § 12102(2)).

A disability requires more than a diagnosis. See Whitlock v. Mac-Gray, Inc., 345 F.3d 44, 46 (1st Cir. 2003) (citations omitted). The impairment must also substantially limit a major life activity. Toyota Motor, 534 U.S. at 195. In other words, to meet the standard, "an individual must have an impairment that prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives." Id. (emphasis added). Major life activities are "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning,

and working." 45 C.F.R. § 84.3(j)(2)(ii).  See also Sullivan v. Neiman Marcus Group, 358 F.3d 110, 114 (1st Cir. 2004).

In determining whether a major life activity is substantially limited, the following factors should be considered: "[t]he nature and severity of the impairment; [t]he duration or expected duration of the impairment; and [t]he permanent or long-term impact, or the expected permanent or long-term impact of or resulting from the impairment."  Toyota Motors, 534 U.S. at 196 (citing 29 C.F.R. §§ 1630.2(j)(2)(i)-(iii)). Summary judgment is appropriate when the plaintiff cannot bring forth evidence showing she suffers from such a limiting condition.  See e.g. Guzman-Rosario v. United Parcel Service, 397 F.3d 6 (1st Cir. 2005) (affirming summary judgment on the ground that the plaintiff's ovarian cysts did not substantially limited a major life activity); Sullivan, 358 F.3d 110 (affirming summary judgment when plaintiff could not show that her cognitive impairment substantially limited a major life activity); Whitney v. Greenberg, Rosenblatt, Kull & Bitsoli, P.C., 258 F.3d 30, 33 (1st Cir. 2001)(affirming summary judgment when plaintiff could not show that dementia substantially limited her ability to work or learn); Hess v. Rochester School District, 396 F.Supp. 65 (D.N.H. 2005) (granting summary judgment to the defendant because

the plaintiff could not show that his mental deficit constituted a disability within the meaning of the ADA).[5]  See also Ristrom v. Asbestos Workers Local 34, 370 F.3d 763, 769 (8th Cir. 2004) ( summary judgment appropriate when the plaintiff could not show that his depression substantially interfered with his ability to learn); Ogborn v. United Food and Commercial Workers Union, 305 F.3d 763. 767-68 (7th Cir. 2002) (summary judgment properly granted when the plaintiff could not show that his depression interfered with a major life activity); Greathouse v. Westfall, 2006 WL 83435 (W.D. Ky. Jan. 10, 2006) (summary judgment granted because the plaintiff who suffered from depression and other conditions substantially limited him in major life activities).

In the instant case, Trahan cannot show the requisite degree of disability.  While Trahan testified that she was diagnosed with clinical depression, that diagnosis alone is not enough.  See Whitlock, 345 F.3d at 46.  She must still show that she is substantially limited in a major life activity.  See, e.g., Toyota Motor, 534 U.S. at 195.  Trahan's deposition testimony

---

[5]Of course, if the facts support substantial limitations, summary judgment on the issue of disability is not appropriate. Calero-Cerezo v. Department of Justice, 355 F.3d 6, 22 (1st Cir. 2004).

does not support a finding of such a substantial limitation.[6] Ex. B, pp. 71-77.

Moreover, even if the extent of Trahan's depression was uncertain at this stage, there is absolutely no evidence that any of the alleged harassment was related to her condition. A claim of harassment based on disability is not actionable unless the plaintiff can show that the alleged harassment was "because of" her status as a member of a protected class. See 42 U.S.C. § 2000e-2(a)(1); Higgins, 194 F.3d at 258. "[N]o claim lies unless the employee presents a plausible legal theory, backed by significantly probative evidence, to show, *inter alia*, that the hostile environment subsisted [because of the employee's membership in a protected class]." Id. at 258. (noting that although the plaintiff worked in a "wretchedly hostile environment" that alone was not enough to support a claim because the harassment was not the result of the plaintiff's membership in a protected class).

In this case, Trahan could not identify any relationship between her alleged disability and the incidents. Ex. B, pp. 69-

---

[6] There is no evidence that the plaintiff was regarded as having a disability. See 45 C.F.R. § 84.3(j)(2)(iii) (being regarded as having a disability means being treated as having an impairment regardless of whether or not one does have an impairment that substantially limits a major life activity).

70.  As far as Trahan knew, Kopacz and Nawracaj were not aware that she suffered from depression.  Ex. B, p. 65.[7]  Trahan also conceded that the managers who knew about her disability were not contributing to the alleged hostile work environment.  Ex. B, pp. 65-66.  Trahan could not even identify persons who were responsible for most of the alleged incidents.  Ex. B, pp. 18, 36-38, 67.

When asked whether she believed that any of the incidents were related to her mental disability, Trahan initially said, "I don't know why I'm being discriminated against."  She then said that she believed the incidents were related to the fact that she witnessed the February 13, 1997, altercation.  Ex. b, pp. 69.  In sum, Trahan cannot produce any evidence of a relationship between her alleged disability and the alleged harassment and does not even believe that such a relationship exists.

### III. THE ALLEGED INCIDENTS WERE NOT SUFFICIENTLY SEVERE OR PERVASIVE AS TO CREATE A HOSTILE WORK ENVIRONMENT

Trahan's claim suffers another fatal deficiency.  The alleged incidents do not amount to a hostile working environment because they were not "sufficiently severe or pervasive to alter the conditions of the [plaintiff's] employment and create an

---

[7] Although the complaint alleges that Brian Sheehan also discriminated against her, she makes no mention of any actions by him in her deposition testimony.

abusive working environment" actionable under Title VII of the Civil Rights Act of 1964.  White v. New Hampshire Dep't of Corr., 221 F.3d 254, 258 (1st Cir. 2000).  See also Rivera, 331 F.3d at 189.

In determining whether an environment is hostile, all of the circumstances must be examined.  Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993).  These circumstances may include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Id.  The standards for judging hostile conduct are demanding so as to "filter out complaints attacking 'the ordinary tribulations of the workplace, such as the sporadic use of abusive language...and occasional teasing.'" In order to alter conditions of employment, conduct must be extreme.  Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998).

Conduct must be so severe or pervasive as to create an "objectively hostile or abusive work environment--an environment that a reasonable person would find hostile or abusive."  Harris, 510 U.S. at 21.  "The thrust of this inquiry is to distinguish between the ordinary, if occasionally unpleasant, vicissitudes of

the workplace and actual harassment." Noviello, 398 F.3d at 92 (citing Faragher, 524 U.S. at 788). In determining whether a reasonable person would find an environment to be objectively offensive, the court must "mull the totality of the circumstances," which includes the frequency and severity of the conduct, whether it was physically threatening, and whether it unreasonably interferes with an employee's work. Noviello, 398 F.3d at 92. Trahan's allegations do not come close to meeting that test.

In this case, the various incidents, many of which are unrelated, were scattered infrequently over a seven-year period. The incidents lack the frequency and severity to constitute a hostile work environment. Faragher, 524 U.S. at 788. Therefore, Trahan's claim fails. See Lee-Crespo v. Schering-Plough Del Caribe, Inc., 354 F.3d 34, 38-39, 47 (1st Cir. 2003) (affirming summary judgment for the defendant when a supervisor frequently commented on the plaintiff's appearance and behavior, asked prying questions about the plaintiff's personal life and looked at the plaintiff in "a very intimidating way," among other behaviors); Morgan v. Massachusetts Gen. Hosp., 901 F.2d 186, 192-93 (1st Cir. 1990) (upholding summary judgment when a co-worker "hung around" the plaintiff, looked at his "privates" in

the restroom, and sometimes stood behind the plaintiff so as to bump into him).

## CONCLUSION

For the foregoing reasons, the Postmaster General respectfully requests that the court grant summary judgment.

Respectfully submitted:

MICHAEL J. SULLIVAN
United States Attorney

By:
_/s/Karen L. Goodwin
_____
Karen L. Goodwin
Assistant U.S. Attorney
1550 Main Street
Springfield, MA 01103
413-785-0235

Dated: February 17, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

_/s/Karen L. Goodwin
_____
Karen L. Goodwin
Assistant U.S. Attorney