UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MARLENE TRAHAN,            )
    Plaintiff              )
                           )
v.                         )   No. 04 CV 30183-MAP
                           )
JOHN E. POTTER, Postmaster )
General, United States Postal )
Service,                   )
    Defendant              )

**MEMORANDUM OF LAW IN OPPOSITION TO
THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

The Defendant, John E. Potter, Postmaster General of the United States Postal Service (hereinafter "The Defendant"), has moved for summary judgment pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1. The Defendant seeks summary judgment on two premises: (1) The Plaintiff, Marlene Trahan (hereinafter "The Plaintiff"), cannot show discrimination because she is not a member of a protected class; and (2), the conduct that the Plaintiff alleges does not meet the "severe and pervasive" standard necessary to sustain a claim of a hostile work environment.

As this memorandum will elucidate, summary judgment is not appropriate on three central grounds. First, this matter is replete with material facts that are in dispute. Second, the Plaintiff can demonstrate discrimination based on her membership

in a protected class. Third, a reasonable person would find that the Defendant's conduct is significantly and sufficiently "severe and pervasive" as to assert a cause of action for a hostile work environment. The Defendant has thus not established that there are no material facts in dispute and is entitled to judgment as a matter of law. As such, this Honorable Court should deny the Defendant's motion and allow this matter to proceed to trial on the merits.

**LOCAL RULE 56.1 STATEMENT OF DISPUTED MATERIAL FACTS**

The Plaintiff, for the limited purpose of her Opposition to the Defendant's Motion for Summary Judgment, asserts that the following are disputed material facts.[1]

1. The Plaintiff's does not dispute the fact that at times relevant to the complaint, the Plaintiff worked at the United States Postal Service (hereinafter "Postal Service") Bulk Mail Center (hereinafter "BMC") in Springfield, Massachusetts. Complaint ¶ 2. The Plaintiff asserts that she has endured an ongoing series of discriminatory harassment and a hostile work environment by Supervisor Linda Nawracaj, Manager Leon Kopacz, and

---

[1] The Defendant asserts that the facts are disputed except where noted otherwise.

          Ethical Officer Brian Sheehan based on her mental disability. Complaint ¶ 7.

2.   The Plaintiff does not dispute the fact that the initial incident that triggered the pattern of discriminatory acts against her transpired on February 13, 1997. Ex. A, Affidavit of Complainant. Nor does the Plaintiff dispute that she indeed found the incident upsetting. The Plaintiff *does* dispute the Defendant's thumbnail characterization of this event because it conveniently ignores Supervisor Nawracaj's severely harsh tone that she employed in disciplining Casual Mailhandler Darlene Hodge, Supervisor Nawracaj's patently unprofessional use of profanity, and the characterization's bald attempt to downplay and trivialize the event's effect on the Plaintiff. Ex. B, Plaintiff's Letter to Reuben Bush, February 18, 1997.

3.   The Defendant asserts that Supervisor Nawrajac questioned the Plaintiff about the substance of her witness statement "the next day" following the incident (presumably on or about February 14, 1997) and that the conversation took place over the telephone. The Plaintiff disputes this assertion to

the extent that the Defendant's assertion omits the fact that Supervisor Nawrajac contacted the Plaintiff employing an unlisted, unpublished telephone number and the Plaintiff found this to be an unwarranted intrusion into her private affairs. Ex. C, Plaintiff's Letter to Reuben Bush, April 10 1997.

4. The Plaintiff does not dispute that fact that the February 22, 1997 conversation between herself and Supervisor Nawrajac upset the Plaintiff and made her fearful. The Plaintiff *does* dispute the assertion's failure to note that the conversation constituted a twenty-five minute interrogation, during the course of which the Plaintiff requested to terminate the questioning no less than five times. Ex. C. The Plaintiff also disputes the assertion's tacit attempts to minimize the February 22, 1997 conversation's impact on the Plaintiff's mental state.

5. The Plaintiff disputes the Defendant's assertion that the telephone call between the Plaintiff and Ethical Officer Brian Sheehan took place on November 19, 1997. The Plaintiff asserts that this

conversation transpired during November of *1999*. Ex. A, ¶ 16(h). This is significant because the telephone conversation (in which Mr. Sheehan allegedly was "screaming and hollering" at the Plaintiff and asked her "who [she] thought [she] was to question the ethics of management", Ex. A, ¶ 16[h]) occurred *after* many of the significant instances of harassment that the Plaintiff alleges, and thus speaks to the retaliatory character of the conversation.

6. The Plaintiff disputes the Defendant's accounting of the plant poisoning episodes that occurred in April and May of 1998. The details of these episodes are rendered conspicuous by their absence in the Defendant's Statement of Material Facts. First, the Defendant omits the fact that following the receipt of a Secretary's Day (April 22, 1998) gift of a flower arrangement, the Plaintiff moved her African Violets *behind* her desk to her filing cabinets. On August 24, 1998, the Plaintiff discovered that the African Violets had be poisoned with coffee and milk. Ex. D, Plaintiff's Statement of June 9, 1998. Therefore, the individual responsible traversed into

the Plaintiff's personal work space to do the deed. Second, the Defendant ignores the fact that the Plaintiff brought in a *new* set of African Violets and on or about May 11, 1998, those too were poisoned, thus a pattern was established. Ex. D. Third, the Defendant's Statement of Facts lends short shrift to the fact that the Defendant's plants at her home were vandalized during the same period. Again, the Defendant's characterization attempts to undermine the deleterious impact that the "coincidental" home vandalism's temporal and proximate connection to the workplace vandalism had on the Plaintiff.

7. The Plaintiff disputes the extremely terse, incomplete and overtly dismissive manner in which the Defendant characterizes the Plaintiff's disability and the significant impact that it has on her major life activities. The Plaintiff asserts the following facts in an attempt to flesh out the Defendant's skeletal description of her depression.

   a. The Plaintiff was diagnosed for depression and began treatment in 1982. Ex. E,

          Complainant's Answers to Agency's First Set of Interrogatories, Answer 1.

b. Since 1982, the Plaintiff has treated with at least *eight* physicians. Ex. E, Answer 3.

c. Subsequent to the February 22, 1997 confrontation by Supervisor Nawrajac, the Plaintiff was bed ridden and felt "guilty, confused, harassed and bewildered;" the Plaintiff also suffered from sleep loss, "extreme depression," constant fatigue, and continuing headaches. Ex. C.

d. As a direct result of the confrontation, the Plaintiff was so "sick about it" that she was forced to cancel hotel reservations that she and her husband had for a (presumably belated) Valentine's Day celebration. Ex. C.

e. The Plaintiff continues to suffer from frightening dreams, causing her to "scream and awaken (her) husband." Ex. D.

f. The Plaintiff asserts that since the altercation, she feels "completely

         overwhelmed by simple tasks and just (can) not think straight." Ex. D.

g.      After her African Violets were poisoned, the Plaintiff "suffers from nightmares, stomachaches and headaches;" mere discussion of the situation "causes (her) to become lightheaded and dizzy and (her) arms and legs to feel numb." Ex. D.

h.      The Plaintiff's driving has been severely affected, she is "extremely anxious, nervous and overcautious as never before;" she is "unable to make decisions without great difficulty and has "not been able to resume (her) normal activities." Ex. D.

## ARGUMENT

### I. THE SUMMARY JUDGMENT STANDARD

The Court, in determining the propriety of a motion for summary judgment, is guided by the standard set forth in Federal Rule of Civil procedures 56(c), which reads in the portion germane to this discussion, as follows:

> The Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no general issue of material fact and that the moving party is entitled

to judgment as a matter of law.

The moving party bears the burden of meeting this high standard. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986).

In ascertaining whether or not the moving party has met this high burden, the Court is required to view the evidence and all factual inferences based on the evidence in a manner most favorable to the non-moving party. See Santoni v. Potter, 369 F.3d 594, 598 (1st Cir. 2004). If the moving party meets this threshold, it then must demonstrate an absence of evidence to support the non-moving party's case. See Celotex, 477 U.S. at 325. In order to survive a summary judgment motion, the non-moving party must then show that sufficient evidence to generate a trial-worthy issue exists. See In re Spigel, 260 F.3d 27, 31 (1st Cir. 2001). Such evidence and contested facts that the nonmoving party produces may not be "merely colorable," but must be "significantly probative" in order to defeat summary judgment." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 250 (1986). Summary Judgment is not appropriate if the evidence is such that a reasonable jury could return a verdict for the non-moving party. See id at 248. Since there are significantly probative discords of material fact and the evidence demonstrates that the Defendant is not entitled to

judgment as a matter of law, this Court should hold that summary judgment is not appropriate in this matter.

## II. THE PLAINTIFF CAN DEMONSTRATE THAT SHE WAS A MEMBER OF A PROTECTED CLASS AND THUS A VICTIM OF DISCRIMINATION

To support a claim for a hostile work environment, a plaintiff must show, among other things that "(1) she is a member of a protected class; (2) she was subject to harassment; and (3) the offending conduct was because of her (membership in a protected class). See Rivera v. P.R. Aqueduct & Sewers Auth., 331 F.3d 189, 189(1st Cir. 2003). As with most cases of discrimination, it is often crucial to read between the lines of each factual scenario; there is rarely a "smoking gun," as it were. Persuasive case law illustrates that short of absolute, black and white proof of discrimination, a non-moving party may defeat summary judgment if they are able to establish "a convincing mosaic of circumstantial evidence" from which a jury could infer that a plaintiff was the victim of discrimination. See Emory v. Astrazenca Pharmac., 401 F. 3d 174 (3rd Cir. 2005). When the totality of the circumstances of this case are examined, a reasonable jury will be able to infer that the Plaintiff's ordeal meets the requirements set out in Rivera. Therefore, summary judgment is untimely at this juncture.

To sustain claimed membership in a protected class for the purpose of asserting a claim of discrimination, a plaintiff must demonstrate that his or her impairment *substantially* limits major life activities and there is a record of this impairment. See Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 193 (2002) (citing 42 U.S.C. § 12102[2])(emphasis added).

Though "'substantially' in the phrase 'substantially limits' suggests (a) 'considerable' or 'to a large degree,'" Toyota Motor, 534 U.S. at 197, The Supreme Court has made clear that the disability standard "addresses *substantial limitations* on major life activities, not *utter inabilities*." See Bragdon v. Abbot, 524 U.S. 624, 641 (1998) (emphasis added); See also Fiscus v. Wal-Mart Stores, Inc., 385 F.3d 378 (3rd Cir. 2004)(*read* the Supreme Court to hold that a substantial limitation of a major life activity does not mean impossibility or even great physical difficulty; rather, "substantial limitation is weighed in a broad, practical sense.")

A Plaintiff who otherwise can perform the functions of a job (with or without reasonable accommodations) can still show substantial limitation to major life activities by demonstrating social isolation that is the result of "any of a number of severe conditions, including acute or profound cases of autism, agoraphobia (or) *depression*." See Jacques v. DiMarzo, Inc., 386

F.3d 192, 203, 204 (2nd Cir. 2004)(emphasis added). A plaintiff can prove that a limitation is substantial by offering personal testimony about his (or her) own experiences. See Haynes v. Williams, 392 F.3d 478, 482 (D.C. Cir. 2004) citing Toyota Motor, 534 U.S. at 198.

The Plaintiff has been afflicted with depression for nearly one quarter of a century. Ex. E. The events of February 1997 exacerbated the Plaintiff's condition. The Plaintiff asserts that because of her reluctance to discuss Supervisor Nawrajac's wildly inappropriate behavior and her reaction, she was singled out for a pattern of hostility which included the willful poisoning of her African Violets. Ex. D. This in turn caused the Plaintiff substantial harm to her major life activities. The Plaintiff has suffered extreme difficulty sleeping, driving, and communicating with others, including her husband. Ex. C and D. the Plaintiff's depression not only affects these major life activities, but permeates throughout all aspects of her life. Since the Plaintiff can demonstrate that her depression substantially limits her major life experiences, she is a member of a protected class. See Id., at 193. Her membership in this protected class caused her to incur the ire of Supervisor Nawrajac and triggered the pattern of hostility that culminated with the poisoning of the Plaintiff's African Violets. Therefore,

the Plaintiff can sustain a claim for a hostile work environment and summary judgment should be denied.

### II. THE INCIDENTS IN THIS MATTER ARE SUFFICIENTLY SEVERE AND PERVASIVE AS TO CREATE A HOSTILE WORK ENVIRONMENT

The defendant argues that the incidents of the Plaintiff's claim do not constitute a hostile working environment because they are not "sufficiently severe or pervasive to alter the conditions of the (Plaintiff's) employment and create an abusive working environment" actionable under Title VII of the Civil Rights Act of 1964. See White v. New Hampshire Dep't of Corr., 221 F.3d 254, 258 (1st Cir. 2000).

In examination into whether or not a workplace is an abusive, or hostile, environment, courts employ analysis based on the totality of the circumstances. See Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998). The factors weighed include, but are not limited to, "the frequency of the discriminatory conduct; *its severity*; whether it is *physically threatening* or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." See Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993)(emphasis added). Whether a workplace environment is deemed hostile depends on an objective standard; namely, whether

a reasonable person would find the environment to be hostile. <u>Id.</u> At 21.

The character of the repeated poisoning of the African Violets alone satisfies nearly every prong of the <u>Harris</u> Test. The conduct is sufficiently severe. The perpetrator of the act violated the Plaintiff's personal space in a serepticious manner and destroyed the Plaintiff's personal property. Poisoning a plant is especially devious because of the tacit inference that a person can be just as easily poisoned. Thus the conduct is sufficiently physically threatening. The poisoning/ vandalism took place at least two and at most three times, creating enough frequency as to establish a pattern. The conduct *did* adversely impact the Plaintiff's work performance as well as her personal life. Ex. A, B, C, D, E.

"The thrust of this inquiry is to distinguish between the ordinary, if occasionally unpleasant vicissitudes of the workplace and actual harassment." See <u>Faragher</u>, 524 U.S. at 788. Since the serial, covert, and malicious nature of the conduct alleged rises far above the "occasional unpleasant vicissitudes of the workplace," it follows that a reasonable jury could find that the workplace was hostile. As such, this Court should deny the Defendant's Motion for Summary Judgment and allow the Plaintiff her day in court.

**CONCLUSION**

For the abovementioned reasons, The Plaintiff Marlene Trahan respectfully requests that this Court Deny Summary Judgment in this matter.

DATED: March 7, 2006

Respectfully Submitted,
THE PLAINTIFF,
By her Attorney

_____
Michael D. Facchini, Esq.
BBO # 639778
FACCHINI & FACCHINI, P.C.
824 Liberty Street
P.O. Box 4052
Springfield, MA 01101-4052
Telephone (413)746-3369
Telecopier (413)733-1662

**CERTIFICATE OF SERVICE**

I, Michael D. Facchini, hereby certify that on March 7, 2005, I made service of the above Memorandum of Law by facsimile and first class mail, postage prepaid, to the attorney of record:

Karen L. Goodwin, Esq.
Assistant U.S. Attorney
1550 Main Street
Springfield, MA 01103

_____

Michael D. Facchini, Esq.

Michael D. Facchini, Esq.