# EXHIBIT A

UNITED STATES POSTAL SERVICE
EQUAL EMPLOYMENT OPPORTUNITY
IN THE MATTER OF:

                       CASE NO.:     1B 010-0021-01
                       FILED DATE:  April 21, 2001

MARLENE T. TRAHAN,    )
    Complainant,           )
                                )
v.                               )    **AFFIDAVIT OF COMPLAINANT**
                                )
WILLIAM J. HENDERSON,  )
POSTMASTER GENERAL,     )
    Respondent.            )

My name is Marlene Trahan, my residence is 20 Dutton, Indian Orchard, Massachusetts, I am an employee for the United States Postal Service and state the following under pains and penalties of perjury:

1. I filed a Complaint of discrimination against the United States Postal Service (hereinafter "USPS") on or about April 21, 2001;

2. On or about February 13, 1997, I witnessed a hostile work environment directed from Supervisor, Ms. Linda Nawracaj (hereinafter "Supervisor"), to Casual mail handler, Ms. Darlene Hodges;

3. On or about February 13, 1997, upon witnessing the hostile work environment instigated and ongoing from Supervisor to Causal Hodges, and then from Supervisor to Mr. Mike Aiello, I was exposed, embarrassed and I didn't want to witness to this very frightening and uncomfortable situation;

4. On or about February 14, 1997, Supervisor's telephoned me at home and inquired from me as to what exactly I had seen and what I was going to put into my witness statement regarding the February 13, 1997 incident aforementioned in paragraph #3 (*hereinafter my February 13, 1997 hostile work environment exposure - "Incident"*)

5. On or about February 14, 1997, I received a telephone call from Mr. Ruben Bush (hereinafter MDO) at my home and MDO asked if I had actually witness Supervisor assault Ms. Causal Hodges and asked me if I would provide a witness statement. I responded that I was extremely upset and I was trying to isolate myself from the Incident;

6. On or about February 14, 1997, I informed Supervisor I was much too upset to speak with her and that I have been in bed all day trying to recover from the emotional upset from the incident and I also informed her that I didn't think it was a good idea for her to contactm e at home;

7. On or about February 14, 1997, I told Supervisor that the Incident was the worst thing that I ever experienced during my entire postal career, and that I have never been so emotionally distraught in a work environment before the Incident;

8. On or about after February 13, 1997, I was vomiting and crying as a result of my exposure to the Incident;

9. On or about February 22, 1997, Supervisor approached me in the general clerks office and told me that she wanted to speak with me regarding the Incident, but I wanted to leave to go home for the weekend, but Supervisor kept pressuring me to answer her questions, and I told her that I didn't think we should talk about it and requesting from her several times to stop harassing me, I finally left for home after she bombarded me with questions;

10. On or about February 22, 1997, as a result of Supervisor pressuring and harassing me at work I felt guilty, confused, harassed and bewildered and I could not believe the postal service had allowed Supervisor to return to work without the Incident being resolved;

11. On or about February 23, 1997 (Sunday), I telephoned from home the United States Postal Service's Employee Assistance Program (hereinafter "EAP") and spoke with a counselor for approximately 60-70 minutes regarding the Incident and counselor advised that I immediately contact my doctor;

12. On or about February 23, 1997, after I spoke with the EAP counselor, I spoke with my doctor who opined that I begin taking a medication to cope with the emotional distress as a result of the Incident;

13. On or about February 24, 1997, I met and consulted with the local EAP, Ms. Susan Boyle -Glidden for approximately 2 hours describing the Incident and its impact on my well being. The local EAP told me that Supervisor's screaming and swearing were not the actions of a rational person and that the Supervisor should take responsibility for her own actions;

14. As a result of the Incident, I continued to faithfully work and treat with my doctor;

15. As a result of the Incident, I felt guilty because I was the objective party that witnessed a hostile a work environment, but still believed I was the target of gossip, rumors, animosity from other employee's regarding my witness statement. I was simply doing my job and I told the truth regarding the Incident;

16. As a result of the Incident, there has been an ongoing pattern of discrimination against me regarding my witness statement resulting in a very hostile and unhealthy work environment. Without specify each discriminatory act on a number of grounds, and without waiving my right to raise these discriminatory acts in future, I state the following:

    a. On or about April 24, 1998, three African Violet plants on my desk were poisoned;
    b. On May 14, 1998, I spoke with Mr. Don McNee, acting EEO counselor and stated that I was upset because my plants were poisoned and the harassment against me had escalated, in my opinion, so that Supervisor could return, and in effect force me to bid another job, in another area and another shift;
    c. On May 18, 1998, I telephoned and reported to the Springfield Postal Inspector's office the poisoning of my personal property and the fear of my personal safety. To date I have not received any response;
    d. On or about May 20, 1998, I suffered a painful attack at home and believed I was poisoned from somebody at work, perhaps the day before. I went to Baystate Medical Center's Emergency Room;
    e. On May 22, 1998, there was vandalism to my plants at home, and it was the first incident of such vandalism;
    f. On May 25, 1998, I contacted Mr. Richard Dewey, acting MDO and told him that I was fearful of returning to work because of the Incident;
    g. As a result of the Incident, I have missed work due the hostile work environment as result and due to the employer's failure to acknowledge, and to provide me a safe, healthy work environment;

    h. My ethical officer, Mr. Brian Sheehan, telephoned me at home on or about November, 1999, screaming and hollering asking "who I thought I was to question the ethics of management" and shouted and tried to intimidated me. As a result, I had a migraine headache and was unable to work that day;

    i. I have recently requested from my employer to provide me a safe and healthy work environment since the Incident, which includes telephone calls, letters and personal visits to supervisors, Congressmen, Senators, President of the United States, Inspector General, Postmaster General and my United States Postal ethical conduct officer, which all have fallen on deaf ears;

17. As a result of the Incident, and the culmination of the on going hostile work environment, I sought additional medical treatment with several counselors and therapist;

18. To the best of my understanding and mental capacity, I was unaware of the ongoing hostile work environment pattern that I was being subjected too until recently.

19. Presently, I am still under medical treatment for my mental disability resulting from the on going hostile work environment created by the above named upper management and others, to be named during discovery and/or called as witnesses.

**SIGNED AND SWORN TO UNDER THE PAINS AND PENALTIES OF PERJURY THIS** 20th **DAY OF NOVEMBER 2001.**

                                                            _/s/ Marlene T. Trahan_
                                                            Marlene T. Trahan