UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MARLENE TRAHAN,  )
    Plaintiff  )
  )
v.  )  No. 04 CV 30183-MAP
  )
JOHN E. POTTER, Postmaster  )
General, United States Postal  )
Service,  )
    Defendant  )

**MEMORANDUM OF LAW IN OPPOSITION TO
THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

<u>INTRODUCTION</u>

The Defendant, John E. Potter, Postmaster General of the United States Postal Service (hereinafter "The Defendant"), has moved for summary judgment pursuant to Fed. R. Civ. P. 56 and Local Rule 56.1. The Defendant seeks summary judgment on two premises: (1) The Plaintiff, Marlene Trahan (hereinafter "The Plaintiff"), cannot show discrimination because she is not a member of a protected class; and (2), the conduct that the Plaintiff alleges does not meet the "severe and pervasive" standard necessary to sustain a claim of a hostile work environment.

As this memorandum will elucidate, summary judgment is not appropriate on three central grounds. First, this matter is replete with material facts that are in dispute. Second, the Plaintiff can demonstrate discrimination based on her membership

in a protected class. Third, a reasonable person would find that the Defendant's conduct is significantly and sufficiently "severe and pervasive" as to assert a cause of action for a hostile work environment. The Defendant has thus not established that there are no material facts in dispute and is entitled to judgment as a matter of law. As such, this Honorable Court should deny the Defendant's motion and allow this matter to proceed to trial on the merits.

## LOCAL RULE 56.1 STATEMENT OF DISPUTED MATERIAL FACTS

The Plaintiff, for the limited purpose of her Opposition to the Defendant's Motion for Summary Judgment, asserts that the following are disputed material facts.[1]

1. The Plaintiff's does not dispute the fact that at times relevant to the complaint, the Plaintiff worked at the United States Postal Service (hereinafter "Postal Service") Bulk Mail Center (hereinafter "BMC") in Springfield, Massachusetts. Complaint ¶ 2. The Plaintiff asserts that she has endured an ongoing series of discriminatory harassment and a hostile work environment by Supervisor Linda Nawracaj, Manager Leon Kopacz, and

---

[1] The Defendant asserts that the facts are disputed except where noted otherwise.

       Ethical Officer Brian Sheehan based on her mental disability. Complaint ¶ 7.

2. The Plaintiff does not dispute the fact that the initial incident that triggered the pattern of discriminatory acts against her transpired on February 13, 1997. Ex. A, Affidavit of Complainant. Nor does the Plaintiff dispute that she indeed found the incident upsetting. The Plaintiff *does* dispute the Defendant's thumbnail characterization of this event because it conveniently ignores Supervisor Nawracaj's severely harsh tone that she employed in disciplining Casual Mailhandler Darlene Hodge, Supervisor Nawracaj's patently unprofessional use of profanity, and the characterization's bald attempt to downplay and trivialize the event's effect on the Plaintiff. Ex. B, Plaintiff's Letter to Reuben Bush, February 18, 1997.

3. The Defendant asserts that Supervisor Nawrajac questioned the Plaintiff about the substance of her witness statement "the next day" following the incident (presumably on or about February 14, 1997) and that the conversation took place over the telephone. The Plaintiff disputes this assertion to

Page 3 of 16

      the extent that the Defendant's assertion omits the fact that Supervisor Nawrajac contacted the Plaintiff employing an unlisted, unpublished telephone number and the Plaintiff found this to be an unwarranted intrusion into her private affairs. Ex. C, Plaintiff's Letter to Reuben Bush, April 10 1997.

4. The Plaintiff does not dispute that fact that the February 22, 1997 conversation between herself and Supervisor Nawrajac upset the Plaintiff and made her fearful. The Plaintiff *does* dispute the assertion's failure to note that the conversation constituted a twenty-five minute interrogation, during the course of which the Plaintiff requested to terminate the questioning no less than five times. Ex. C. The Plaintiff also disputes the assertion's tacit attempts to minimize the February 22, 1997 conversation's impact on the Plaintiff's mental state.

5. The Plaintiff disputes the Defendant's assertion that the telephone call between the Plaintiff and Ethical Officer Brian Sheehan took place on November 19, 1997. The Plaintiff asserts that this

        conversation transpired during November of *1999*. Ex. A, ¶ 16(h). This is significant because the telephone conversation (in which Mr. Sheehan allegedly was "screaming and hollering" at the Plaintiff and asked her "who [she] thought [she] was to question the ethics of management", Ex. A, ¶ 16[h]) occurred *after* many of the significant instances of harassment that the Plaintiff alleges, and thus speaks to the retaliatory character of the conversation.

6.    The Plaintiff disputes the Defendant's accounting of the plant poisoning episodes that occurred in April and May of 1998. The details of these episodes are rendered conspicuous by their absence in the Defendant's Statement of Material Facts. First, the Defendant omits the fact that following the receipt of a Secretary's Day (April 22, 1998) gift of a flower arrangement, the Plaintiff moved her African Violets *behind* her desk to her filing cabinets. On August 24, 1998, the Plaintiff discovered that the African Violets had be poisoned with coffee and milk. Ex. D, Plaintiff's Statement of June 9, 1998. Therefore, the individual responsible traversed into

the Plaintiff's personal work space to do the deed. Second, the Defendant ignores the fact that the Plaintiff brought in a *new* set of African Violets and on or about May 11, 1998, those too were poisoned, thus a pattern was established. Ex. D. Third, the Defendant's Statement of Facts lends short shrift to the fact that the Defendant's plants at her home were vandalized during the same period. Again, the Defendant's characterization attempts to undermine the deleterious impact that the "coincidental" home vandalism's temporal and proximate connection to the workplace vandalism had on the Plaintiff.

7. The Plaintiff disputes the extremely terse, incomplete and overtly dismissive manner in which the Defendant characterizes the Plaintiff's disability and the significant impact that it has on her major life activities. The Plaintiff asserts the following facts in an attempt to flesh out the Defendant's skeletal description of her depression.

   a. The Plaintiff was diagnosed for depression and began treatment in 1982. Ex. E,

Page 6 of 16

       Complaintant's Answers to Agency's First Set of Interrogatories, Answer 1.

b. Since 1982, the Plaintiff has treated with at least *eight* physicians. Ex. E, Answer 3.

c. Subsequent to the February 22, 1997 confrontation by Supervisor Nawrajac, the Plaintiff was bed ridden and felt "guilty, confused, harassed and bewildered;" the Plaintiff also suffered from sleep loss, "extreme depression," constant fatigue, and continuing headaches. Ex. C.

d. As a direct result of the confrontation, the Plaintiff was so "sick about it" that she was forced to cancel hotel reservations that she and her husband had for a (presumably belated) Valentine's Day celebration. Ex. C.

e. The Plaintiff continues to suffer from frightening dreams, causing her to "scream and awaken (her) husband." Ex. D.

f. The Plaintiff asserts that since the altercation, she feels "completely

                overwhelmed by simple tasks and just (can) not think straight." Ex. D.

g.       After her African Violets were poisoned, the Plaintiff "suffers from nightmares, stomachaches and headaches;" mere discussion of the situation "causes (her) to become lightheaded and dizzy and (her) arms and legs to feel numb." Ex. D.

h.       The Plaintiff's driving has been severely affected, she is "extremely anxious, nervous and overcautious as never before;" she is "unable to make decisions without great difficulty and has "not been able to resume (her) normal activities." Ex. D.

## ARGUMENT

### I. THE SUMMARY JUDGMENT STANDARD

The Court, in determining the propriety of a motion for summary judgment, is guided by the standard set forth in Federal Rule of Civil procedures 56(c), which reads in the portion germane to this discussion, as follows:

> The Judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no general issue of material fact and that the moving party is entitled